# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

ALEX NEGRON (#R-17084),    )
    )
    Petitioner,    )
    )    No. 12-cv-00014
    v.    )
    )    Judge Andrea R. Wood
WALTER NICOLSON, Warden,    )
Stateville Correctional Center,    )
    )
    Respondent.[1]    )

## MEMORANDUM OPINION AND ORDER

Petitioner Alex Negron, a prisoner incarcerated at Stateville Correctional Center, has brought this *pro se* petition for a writ of *habeas corpus* pursuant to 28 U.S.C. § 2254 to challenge his 2002 murder conviction from the Circuit Court of Cook County. For the reasons explained below, the Court denies the petition.

## BACKGROUND

The Court draws the following factual history from the state court record. (Dkt. No. 57.)[2]

Negron and his codefendant, Yohn Zapada, were convicted of the murder of Omar Brown. *Illinois v. Negron*, 2014 IL App (1st) 123237-U, 2014 WL 2811532, at *1 (Ill. App. Ct. June 19, 2014) ("*Successive Post-Conviction Appeal*"). Two eyewitnesses testified in court that Zapada and Negron both shot the victim. *Id*. The eyewitnesses also identified Negron in a police lineup. *Id*. The police recovered the murder weapon in Negron's hotel room less than five hours after the

---

[1] This case was initially captioned with Marcus Hardy as Respondent in his capacity as Warden at Stateville Correctional Center. Because Walter Nicholson now holds that position, he has been substituted for Hardy as Respondent in this case. *See* Fed. R. Civ. P. 25(d); Rule 2(a) of the Rules Governing Section 2254 Cases; *Rumsfeld v. Padilla*, 542 U.S. 426, 436 (2004).

[2] State court factual findings are presumed correct, and Negron has the burden of rebutting the presumption by clear and convincing evidence. *Brumfield v. Cain*, 135 S. Ct. 2269, 2282 n.8 (2015) (citing 28 U.S.C. § 2254(e)(1)). Negron has not made such a showing.

killing. *Id*. And a firearms expert matched the bullets recovered from the victim's body to the gun discovered in Negron's hotel room. *Id*.

Negron's conviction was affirmed on appeal and his multiple state collateral proceedings challenging his conviction were rejected. Negron originally filed his *habeas corpus* petition in this Court while one of his collateral proceedings was still pending in the state courts. Accordingly, the *habeas corpus* petition was stayed pending the resolution of Negron's state court proceedings. (Dkt. No. 8.) After completion of the state court proceedings, the Court lifted the stay and ordered briefing on his federal *habeas* petition. (Dkt. No. 39.) Negron then amended the petition, adding several claims. (Dkt. No. 46.) The parties have briefed both the original and supplemental claims, and the *habeas* petition is now ready for ruling.

## DISCUSSION

### I.      Claim One[3]

In Claim One, Negron argues that he was an innocent bystander at the shooting. According to Negron's post-conviction petition, the victim and a another man, Rafael Vega, got into a fight with Negron, Zapada, and a third man, who Negron knows only as Danny. *Illinois v. Negron*, No. 1-09-1206, 2011 WL 9688907, at *1 (Ill. App. Ct. Mar. 25, 2011) ("*Post-Conviction Appeal*"). The fight started when the victim tried to run over Zapada. *Id*. Eventually, the victim and Vega choked and struck Zapada, forcing him to the ground. *Id*. Danny came to Zapada's aid. *Id*. Zapada took Danny's gun and fired it twice with the intent of scaring the victim. *Id*. However, Zapada's shots struck the victim. *Id*. Negron explains that he ran when he heard the gunshots. *Id*. Zapada gave the gun back to Danny and fled as well. *Id*. Negron claims that he heard additional gunshots

---

[3] Claims One through Five are presented in Petitioner's original *habeas* petition (Dkt. No. 1), while Claims Six through Nine are set forth in his supplemental filing (Dkt. No. 46). Respondent's response renumbers Petitioner's claims. The Court follows the numbering used by Petitioner.

as he was fleeing. *Id*. He looked back to see Danny chasing after the victim while firing additional shots. *Id*. Negron's post-conviction petition included an affidavit from Zapada attesting that Zapada did not see Negron with a gun during the incident. *Id*.

Claim One asserts that Negron's trial counsel was ineffective for failing to investigate Zapada's testimony that he shot the victim in self-defense and that Danny chased after the victim. Negron further argues that his appellate counsel was ineffective for failing to raise an ineffective assistance of trial counsel argument regarding this issue on direct appeal and that his post-conviction counsel was ineffective for failing to pursue the issue properly in the post-conviction proceeding. Respondent counters by arguing, first, that the arguments that Negron's trial counsel and appellate counsel on direct appeal were ineffective are procedurally defaulted and, second, that Negron's argument that his post-conviction counsel was ineffective is non-cognizable.

Turning to the matter of the purported ineffective assistance of trial counsel and appellate counsel on direct appeal, "[t]o obtain federal *habeas* review, a state prisoner must first submit his claim through one full round of state-court review." *Johnson v. Hulett*, 574 F.3d 428, 431 (7th Cir. 2009) (citing *Picard v. Connor*, 404 U.S. 270, 275–76 (1971)); *see also* 28 U.S.C. § 2254(b)(1). The prisoner must present the operative facts and controlling law of the claim before the state courts so that the state court has a meaningful opportunity to consider the claim before it is raised in federal court. *Anderson v. Benik*, 471 F.3d 811, 814 (7th Cir. 2006) (citations omitted). Thus, to pursue his claim before this Court, Negron must have asserted the claim through all levels of the Illinois courts, including in a petition for leave to appeal ("PLA") before the Illinois Supreme

Court. *Guest v. McCann*, 474 F.3d 926, 930 (7th Cir. 2007) (citing *O'Sullivan v. Boerckel*, 526 U.S. 838, 842–46 (1999)).

Negron's arguments based upon the purported ineffective assistance of his trial counsel and appellate counsel on direct appeal were presented in the post-conviction petition proceedings in the state trial court. (Dkt. No. 57-38 at 19.) In his post-conviction appeal before the Illinois Appellate Court, however, Negron argued Zapada's affidavit demonstrated that Negron was actually innocent or, alternatively, that he should not have received a sentencing enhancement for personally discharging the firearm that killed the victim. (Dkt. No. 57-13).

Notably, the appellate brief written by appointed counsel makes no mention of ineffective assistance of counsel, *Strickland v. Washington*, 466 U.S. 668 (1984), or any other relevant case law regarding ineffective assistance of counsel. Instead, the brief cites *Illinois v. Washington*, 665 N.E.2d 1330 (Ill. 1996), in which the Illinois Supreme Court held that although the United States Constitution does not establish a freestanding claim of actual innocence, an actual innocence claim is allowed under the Illinois Constitution. Unsurprisingly, the appellate court only addressed the actual innocence argument (and did not discuss ineffective assistance of counsel) in its ruling affirming the denial of the post-conviction petition. *Post-Conviction Appeal*, No. 1-09-1206, 2011 WL 9688907, at *1-*3.

Following the appellate court's affirmance, Negron, again through appointed counsel, filed a PLA in the Illinois Supreme Court. (Dkt. No. 57-17.) The PLA reasserted the actual innocence argument raised in the appellate court. *Id*. Like in the appellate court, Negron argued that Zapada's affidavit demonstrated that he was actually innocent or, at a minimum, that he should not have received a sentencing enhancement for discharging a firearm. *Id*. And as with the appellate court

brief, the PLA neither included an ineffective assistance of counsel argument nor cited *Strickland* or other relevant ineffective assistance of counsel case law. *Id.*

Although Negron presented the same factual predicate (*i.e.*, Zapada's affidavit) in his post-conviction petition in the trial court, his appellate court brief, and his PLA, he did not pursue the same legal claim through all three levels of review as required to exhaust the claim. Rather, to exhaust his claim, Negron was required to "alert fairly the state court to the federal nature of the claim and to permit that court to adjudicate that federal issue." *Villanueva v. Anglin*, 719 F.3d 769, 775 (7th Cir. 2013) (citing *Anderson v. Harless*, 459 U.S. 4, 6 (1982) (per curiam); *Verdin v. O'Leary*, 972 F.2d 1467, 1474 (7th Cir. 1992)) (internal quotation marks omitted). A level of variation in the presentation of claims during the exhaustion process is allowed. "[P]etitioner may reformulate [his] claims so long as the substance of the claim remains the same." *Sweeney v. Carter*, 361 F.3d 327, 333 (7th Cir. 2004). Consequently, "'a mere variation in legal theory'" does not automatically lead to a finding of failure to exhaust.'" *Sweeney*, 361 F.3d at 333 (quoting *United States ex rel., Nance v. Fairman*, 707 F.2d 936, 940 (7th Cir. 1983)). But "two different claims arising from a common set of facts," as Negron has presented here, "is not enough to avoid [procedural] default." *Sweeney*, 361 F.3d at 333. Negron's ineffective assistance of counsel arguments are thus procedurally defaulted. *Boerckel*, 526 U.S. 838 at 842–46.

Moreover, Negron cannot excuse his procedural default by invoking the exceptions for cause and prejudice or for a fundamental miscarriage of justice. Regarding the former, cause is present when an "'objective factor, external to [Petitioner] . . . impeded his efforts to raise the claim in an earlier proceeding.'" *Weddington v. Zatecky*, 721 F.3d 456, 465 (7th Cir. 2013) (quoting *Smith v. McKee*, 596 F.3d 374, 382 (7th Cir. 2010)). Examples of cause include: (1)

interference by officials making compliance impractical; (2) the existence of a factual or legal basis that was not reasonably available to counsel; or (3) ineffective assistance of counsel. *Guest*, 474 F.3d at 930 (citing *McCleskey v. Zant*, 499 U.S. 467 (1991)). The first two types of cause are not applicable here.

As to the third type of cause—ineffective assistance of counsel—the general rule holds that there is no constitutional right to effective assistance of counsel at any stage of post-conviction proceedings. *Coleman v. Thompson*, 501 U.S. 722, 757 (1991). The United States Supreme Court does, however, recognize a limited exception to this general rule: "'[a] procedural default will not bar a federal *habeas* court from hearing a substantial claim of ineffective assistance at trial if, in the State's initial-review collateral proceeding, there was no counsel or counsel in that proceeding was ineffective.'" *Trevino v. Thaler*, 569 U.S. 413, 417 (2013) (quoting *Martinez v. Ryan*, 566 U.S. 1, 17 (2011)). But this exception does not help Negron, as it is limited to ineffective assistance of counsel at initial review collateral proceedings—it does not apply to other attorney errors "including [those in] appeals from initial-review collateral proceedings." *Martinez*, 566 U.S. at 16. Consequently, this case is governed by the general rule that ineffective assistance of post-conviction counsel does not constitute cause to excuse procedural default.

This leaves Negron with only with the fundamental miscarriage of justice (*i.e.*, actual innocence) exception as a possible means to excuse his default. Proving actual innocence in this context requires Negron to demonstrate that "'in light of the new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt.'" *McQuiggins v. Perkins*, 133 S. Ct. 1924, 1928 (2013) (quoting *Schlup v. Delo*, 513 U.S. 298, 329 (1995)). This is a "demanding" and "seldom met" standard. *Id.* at 1928 (citing *House v. Bell*, 547 U.S. 518, 538

(2006)). Negron must present new, reliable evidence that was not presented at trial—such as exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—to make a credible claim of actual innocence. *House*, 547 U.S. at 537 (citing *Schlup*, 513 U.S. at 324).

But Negron cannot demonstrate that he is actually innocent. The only new evidence not presented at trial brought forth by Negron are the affidavit from his codefendant discussed above and an affidavit from Jaime Rodriguez. (Dkt. No. 57-19 at 11.) Those affidavits are similar in that both affiants claim that Negron was not the shooter. Negron also attempts to reargue the credibility of the eyewitnesses who testified against him based on the arguments presented (and rejected by the jury) at trial. These include whether the witnesses changed their statements over time and whether their testimony was consistent with the physical evidence revealed by the victim's autopsy.

In *Hayes v. Battaglia*, 403 F.3d 935, 937 (7th Cir. 2005), however, the Seventh Circuit explains that the aforementioned type of affidavit evidence falls short of the demanding actual-innocence standard. The problem for Negron is that the jury may base its conviction on a single eyewitness even though testimony from other witnesses and evidence might suggest the eyewitness is mistaken. *Id*. at 938. The actual-innocence standard requires not simply creating doubt through new evidence but also demonstrating that no jury would have found Negron in light of the new evidence. That is why "adequate evidence [for actual innocence] is 'documentary, biological (DNA), or other powerful evidence: perhaps some non-relative who places him out of the city, with credit card slips, photographs, and phone logs to back up the claim." *McDonald v. Lemke*, 737 F.3d 476, 483–84 (7th Cir. 2013) (quoting *Hayes*, 403 F.3d at 938). The evidence

offered by Negron does not rise to that level. Additionally, Negron does not address the fact that the murder weapon was found in his hotel room just hours after the murder. In short, Negron cannot excuse the procedural default of his clams for ineffective assistance of his trial counsel and his appellate counsel on direct appeal. Those arguments are procedurally defaulted.[4]

Finally, Negron's ineffective assistance of post-conviction counsel argument is dismissed as non-cognizable. *See* 28 U.S.C. § 2254(i) (ineffective assistance of post-conviction counsel is not a ground for habeas corpus relief); *Martinez*, 566 U.S. at 17.

Claim One is denied as procedurally barred and as meritless.

## II.    Claim Two

Negron argues in Claim Two that the imposition of an enhanced sentence violated his Fifth Amendment Double Jeopardy rights. (Dkt. No. 1 at 7–8.) Negron claims that he was convicted of murder but acquitted of attempted murder and aggravated discharge of a firearm. Nonetheless, despite the acquittal, Negron received an extended-term sentence for his murder conviction due to his personal discharge of a firearm. He claims his acquittal on that charge precludes him from receiving the extended-term sentence.

This claim, however, is procedurally defaulted as well. As with Claim One, Negron raised Claims Two in his first post-conviction petition (Dkt. No. 57-38 at 20–21) but failed to assert it in his post-conviction state appellate court appeal (Dkt. No. 57-13) or his PLA (Dkt. No. 57-17). And so Claim Two, like Claim One, is procedurally defaulted. *Boerckel*, 526 U.S. 838 at 842–46.

---

[4] For completeness, the Court notes that even if Negron somehow overcame the procedural default, his ineffective assistance of counsel arguments would be meritless under the standard established by *Strickland v. Washington*, 466 U.S. 668 (1984). The jury heard eyewitness testimony linking Negron to the murder and that the murder weapon was discovered in Negron's hotel room mere hours after the killing. Negron would not be able to meet the prejudice prong of the two-part *Strickland* standard in light of this evidence tying him to the murder.

Furthermore, Negron cannot overcome the procedural default under either the cause and prejudice or fundamental miscarriage of justice standard.

Beyond the procedural default, Claim Two also fails on its merits. Negron's argument misunderstands the record in his case. He was initially charged with murdering Brown and with attempted murder and aggravated discharge of a weapon as to Vega. (Dkt. No. 57-36, at 14–25.) The prosecution proceeded to trial solely on the murder charge (Dkt. No. 57-29 at 72–73) and Negron was convicted of that charge at trial (Dkt. No. 57-31 at 108). Negron was not acquitted of the attempted murder and aggravated discharge charges as he claims. Moreover, the jury instructions for the murder charge also included a requirement that the jury find that Negron personally discharged the firearm during the commission of the murder. (Dkt. No. 57-36 at 70.) The jury did find that Negron murdered Brown through personal discharge of a firearm, thus qualifying Negron for the enhanced sentence.

### III.   Claim Three

In Claim Three, Negron argues that the imposition of an enhanced sentence for his murder conviction violates the Equal Protection Clause of the Fourteenth Amendment. (Dkt. No. 1 at 9–10.) The applicable statute imposes an enhanced sentence for use of a firearm while murders committed with other weapons, such as knives or clubs, do not result in an enhancement.

Respondent argues that Claim Three, like Claims One and Two, is also procedurally defaulted. In doing so, Respondent recognizes that Negron argued the unconstitutionally of his 20-year sentence on direct appeal but nonetheless asserts that Negron failed to exhaust the claim because he raised, among other constitutional grounds, a due process claim instead of an equal protection claim. A review of his brief before the state appellate court, however, shows that

Negron put the state appellate court on notice of his current claim. Although not expressly invoking equal protection of the laws, Negron did present the situation of comparing two murders—one by knife and the other with a firearm. (Dkt. No. 57-7 at 26.) This is a circumstance where Negron has reformulated his claim with the substance remaining the same. *Sweeney*, 361 F.3d at 333. Negron also presented the claim in his PLA, resulting in exhaustion of the claim. (Dkt. No. 57-10.)

Still, even though he has not procedurally defaulted Claim Three, the claim is meritless. Claim Three was rejected on the merits on direct appeal to the state appellate court, *i.e.*, the last state court to consider Negron's claim on the merits. (Dkt. No. 57-1.) As a result, Negron must show that the state appellate court's ruling was contrary to, or an unreasonable application of, clearly-established federal law. 28 U.S.C. § 2254(d).

"When those who appear similarly situated are nevertheless treated differently, the Equal Protection Clause requires at least a rational reason for the difference, to ensure that all persons subject to legislation or regulation are indeed being treated alike, under like circumstances and conditions." *Engquist v. Oregon Dep't. of Agric.*, 553 U.S. 591, 602 (2008) (internal quotation marks and citations omitted). The state appellate court rejected Negron's claim in light of its decision in *Illinois v. Zapata*, 808 N.E.2d 1064 (Ill. App. Ct. 2004). (Dkt. No. 57-1 at 2.) In that decision, the appellate court explained that Illinois punishes a murder committed with a firearm more harshly than other murders because there is a "unique, pervasive and enhanced danger from an offender's [] discharge of a firearm during" a murder. *Id*. at 1078. It is not irrational for Illinois to conclude that the dangers presented by firearms are greater than those presented by other weapons, such as knives or clubs, and thus to punish murders committed with guns more harshly

than other murders. The state appellate court did not err in rejecting Negron's claim, and so Negron cannot demonstrate the state court ruling was contrary to, or an unreasonable application of, clearly established federal law. Claim Three is denied.

## IV.    Claim Four

Claim Four asserts that there is insufficient evidence to support Negron's conviction. (Dkt. No. 1 at 10–12.) Like with Claims One and Two, Negron raised Claim Four in his first post-conviction petition (Dkt. No. 57-38 at 23–25) but failed to assert the claim in his state post-conviction appeal (Dkt. No. 57-13) or his PLA (Dkt. No. 57-17). As a result, the claim is procedurally defaulted. *Boerckel*, 526 U.S. 838 at 842–46. Also like Claims One and Two, Negron cannot overcome the procedural default based on either cause and prejudice or a fundamental miscarriage of justice.

Beyond the procedural default, Claim Four is also meritless. "The evidence is sufficient to support a conviction whenever, 'after viewing the evidence in the light most favorable to the prosecution, ***any*** rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *Parker v. Matthews*, 567 U.S. 37, 43 (2012) (per curiam) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)) (emphasis in original). "'[I]t is the responsibility of the jury—not the court—to decide what conclusions should be drawn from evidence admitted at trial.'" *Id.* at 43 (quoting *Cavazos v. Smith*, 565 U.S. 1, 2 (2011) (per curiam)).

There is sufficient evidence here to support Negron's conviction—including both eyewitness testimony and physical evidence linking him to the crime. Negron argues that the eyewitnesses who testified against him were lying and that the Court should believe the Zapada and Rodriguez affidavits instead. But the Court cannot engage in such witness credibility

determinations. The jury believed the eyewitnesses who testified against Negron. *Hayes*, 403 F.3d at 938 (stating that the "testimony of a single eyewitness suffices for a conviction even if 20 bishops testify that the eyewitness is a liar."). Additionally, the murder weapon was found in Negron's hotel room just hours after the killing. Accordingly, not only is Claim Four procedurally defaulted but it is also meritless.

## V.     Claim Five

In Claim Five, Negron argues that he is actually innocent and that the state trial court erred in its handling of his actual innocence claim. (Dkt. No. 1 at 12–13.) Negron initially raised this claim as Claim Five in his original *habeas* petition. He then renewed the claim labeling it Claims Four and Five in his amended filing. (Dkt. No. 46 at 9–15.) For purposes of this Memorandum Opinion, the Court combines the arguments as "Claim Five."

Negron must show that the state court's ruling was contrary to, or an unreasonable application of, Supreme Court precedent in existence at the time of the state court ruling. *Greene v. Fisher*, 565 U.S. 34, 38 (2011). There was no Supreme Court precedent holding that an actual innocence claim is cognizable in a federal *habeas* proceeding. Indeed, "'[c]laims of actual innocence based on newly discovered evidence have never been held to state a ground for federal *habeas* relief absent an independent constitutional violation occurring in the underlying state criminal proceeding.'" *Tabb v. Christianson*, 855 F.3d 757, 764 (7th Cir. 2017) (quoting *Herrera v. Collins*, 506 U.S. 390, 390–91 (1993)). "Whether the constitutional guarantee of due process supports independent claims of actual innocence without any other constitutional violation remains open to debate." *Tabb*, 855 F.3d at 764 (citations omitted) Consequently, Negron cannot obtain relief on this claim. *Wright v. Van Patten*, 552 U.S. 120, 126 (2008) (per curiam).

Additionally, beyond the claim being non- cognizable and not clearly-established law, as explained above regarding the fundamental miscarriage of justice exception, Negron cannot demonstrate actual innocence. Claim Five is denied.

## VI.    Claim Six

Negron argues in Claim Six that the prosecution knowingly used perjured testimony during his trial. (Dkt. No. 46 at 16–19.) This claim continues Negron's theme that the witnesses testifying against him lied at trial. Specifically, with respect to Claim Six, Negron argues that Vega's grand jury testimony and trial testimony conflict with each other. This conflict leads Negron to contend that the prosecution knowingly presented false testimony from Vega at trial. Respondent correctly counters that Claim Six is both procedurally defaulted and untimely.

### A.    Procedural Default

Regarding the procedural default, Negron raised Claim Six for the first time in the state court in his successive post-conviction petition. (Dkt. No. 57-39 at 28–29.) He also raised an actual innocence claim supported by the affidavit from Rodriguez, as well as claims for ineffective assistance of counsel, official misconduct, and insufficient evidence. The state trial court denied Negron leave to file his successive petition. (Dkt. No. 57-39 at 81.) And Negron failed to raise the knowing use of perjury claim on appeal to the Illinois Appellate Court (Dkt. No. 57-19) or in his PLA before the Illinois Supreme Court (Dkt. No. 57-22). Negron only raised the actual innocence claim on appeal and dropped the other claims including the present perjury claim. The state appellate court affirmed the trial court's denial of Negron's request for leave to file his successive post-conviction petition. *Successive Post-Conviction Appeal*, 2014 IL App (1st) 123237-U, 2014

WL 2811532, at *5. The Supreme Court of Illinois denied Negron's PLA, ending the successive petition proceedings. *Illinois v. Negron*, No. 118228, 21 N.E.3d 717 (Ill. Nov. 26, 2014) (Table).

The state court's refusal to grant Negron leave to file his successive post-conviction petition results in a procedural default. The Illinois Post-Conviction Hearing Act limits a prisoner to one petition as a matter of course. 725 ILCS 5/122-1(f). A prisoner seeking to file a second or successive post-conviction petition must receive leave of court to file. *Illinois v. Evans*, 989 N.E.2d 1096, 1098 (Ill. 2013). To obtain leave, the prisoner must demonstrate cause and prejudice or that he is actually innocent to excuse his failure for not bringing his claims in an earlier proceeding, such as his direct appeal or first post-conviction petition. *Id*. The state court's reliance on this procedural ground results in the default of this case.

"As a rule, a state prisoner's *habeas* claims may not be entertained by a federal court 'when (1) a state court has declined to address those claims because the prisoner has failed to a meet a state procedural requirement, and (2) the state judgment rests on independent and adequate state procedural grounds.'" *Maples v. Thomas*, 565 U.S. 266, 280 (2012) (quoting *Walker v. Martin*, 562 U.S 307, 315 (2011); *Coleman v. Thompson*, 501 U.S. 722, 729–30 (1991)). To be independent, the state court must have actually relied upon the procedural bar as an independent basis for the disposition of the case. *Lee v. Foster*, 750 F.3d 687, 693 (7th Cir. 2014) (citation omitted). To be adequate, the state rule must be "'firmly established and regularly followed.'" *Walker*, 562 U.S. at 316 (quoting *Beard v. Kindler*, 558 U.S. 53, 60–61 (2009)). Here, the state court relied upon Illinois's bar on the filing of second and successive post-conviction petitions in deciding Negron's case. (Dkt. No. 57-39 at 81.) This bar constitutes a well-established state law ground, as it is codified into Illinois law. It is sufficiently established to allow the finding of

procedural default. *Miranda v. Leibach*, 394 F.3d 984, 992 (7th Cir. 2005). Negron's claim is thus defaulted on this ground.

Additionally, Negron's failure to raise the claim to all three levels of the state courts provides an additional ground to find procedural default separate and distinct from the state court's refusal to grant Negron leave to file his petition. Negron raised his claim in his successive post-conviction petition but abandoned it in his appellate court appeal and state PLA. This is a second reason why the claim is defaulted. *Boerckel*, 526 U.S. 838 at 842-46.

As with Claims One, Two, and Four, Negron cannot overcome the procedural default based on cause and prejudice or a fundamental miscarriage of justice. Claim Six is procedurally defaulted.

### B. Untimeliness

Beyond the procedural default, Claim Six is untimely under the one-year statute of limitations set forth in 28 U.S.C. § 2244(d).

Negron had one year to file his *habeas corpus* petition. 28 U.S.C. § 2244(d)(1). The one-year period started on the latest date of: (A) the completion of his direct appeal (or expiration of time to bring the direct appeal), (B) the removal of an unconstitutional state created impediment that had previously preventing the filing of the petition; (C) the recognition of a new constitutional right that has been made retroactive on collateral review by the Supreme Court of the United States; or (D) the date on which the factual predicate of the claim could have been discovered through due diligence. 28 U.S.C. § 2244(d)(1)(A)-(D). The one-year period was tolled when Negron's properly filed application for post-conviction or other collateral relief was pending in the state courts. 28 U.S.C. § 2244(d)(2).

The relevant date for calculating the one-year period in this case is determined under § 2244(d)(1)(A).[5] The final event in Negron's direct appeal was the affirmance of his conviction by the Illinois Appellate Court on July 24, 2008. (Dkt. No. 57-2.) Negron did not file a PLA following the appellate court ruling. Consequently, Negron's direct appeal ended for purposes of § 2244(d)(1)(A) when the 35-day period for bringing his PLA under Illinois Supreme Court Rule 315 expired on August 28, 2008. *Gonzalez v. Thaler*, 132 S. Ct. 641, 653–54 (2012). Negron had previously filed his first state post-conviction petition on February 15, 2007 (Dkt. No. 57-38 at 15), and that proceeding was pending when his direct appeal was completed in August 2008. Consequently, the one-year limitations period was tolled under 28 U.S.C. § 2244(d)(2) until the post-conviction proceedings were completed on September 28, 2011 with the denial of his post-conviction PLA. *Illinois v. Negron*, No. 112492, 955 N.E.2d 477 (Sept. 28, 2011) (Table). Negron had one year from September 28, 2011 to file this claim or bring another state court proceeding that would toll the statute of limitations. Negron did bring his original *habeas* petition in this Court in January 2012. (Dkt. No. 1.) That petition did not include Claim Six, however. Instead, Claim Six was not raised until Negron amended his petition in April 2016. (Dkt. No. 46.)

Although the Court stayed its consideration of the original *habeas* petition in January 2012, Negron must still demonstrate that his amended filing relates back to the original *habeas* petition to take advantage of the January 2012 filing date for purposes of the claims in the amended filing. Relation back of the amended filing to the original *habeas corpus* petition is allowed if both filings contain a common core of operative facts that unites the original and amended filings. *Mayle v.*

_____

5 Regarding § 2244(d)(1)(D), Petitioner alleges that the prosecution knowingly used perjured testimony based on the witness's prior grand jury testimony. As the factual predicate of the claim (the grand jury and trial testimony) was available prior to the completion of direct appeal, § 2244(d)(1)(A) is the proper subsection for calculating the statute of limitations period.

*Felix*, 545 U.S. 644, 659 (2005). Although the original petition claims that Negron was innocent, there is no mention of Vega's grand jury testimony or any suggestion that such testimony demonstrates that the prosecution knowingly used allegedly false testimony at trial. This is a new claim raised for the first time in the amended filing, and so it does not relate back to the original *habeas* petition for statute of limitations purposes.

As he has failed to show that his amended claims relate back to his original petition, to salvage his claim, Negron must demonstrate additional tolling between September 28, 2011 (when his first post-conviction petition proceeding was completed) and the filing of his amended petition in April 2016. If Negron cannot demonstrate tolling during this period, then his one-year limitations period would have expired on September 28, 2012, resulting in the claims in his amended filing being untimely.

Unfortunately for Negron, he cannot demonstrate a basis for the additional tolling needed to render his claim timely. His federal *habeas* petition filed in January 2012 does not toll the statute of limitations because a federal *habeas* petition cannot toll the statute of limitations under § 2244(d)(2). *Duncan v. Walker*, 533 U.S. 167, 181–82 (2001). Similarly, Negron's successive post-conviction petition does not toll the statute of limitations because, as explained above, he was denied leave to file the petition. *Martinez v. Jones*, 556 F.3d 637, 639 (7th Cir. 2009) (per curiam) (holding that second or successive Illinois post-conviction petition proceeding does not toll the federal statute of limitations under 28 U.S.C. § 2244(d)(2), unless the prisoner is given leave to file the petition by the Illinois courts).

Negron's final state court filing was a motion for relief from judgment under 735 ILCS 5/2-1401. (Dkt. No. 57-40 at 25.) This document was filed on February 6, 2013—*i.e.*, after the

one-year limitations period expired on September 28, 2012. Consequently, it cannot save the timeliness of the claim either, as it was filed after the statute of limitations period expired for this claim. *De Jesus v. Acevedo*, 567 F.3d 941, 943 (7th Cir. 2009).

Negron cannot excuse the untimeliness of his petition. While actual innocence may excuse an untimely claim, *McQuiggin v. Perkins*, 569 U.S. 383 (2013), as explained above, Negron cannot demonstrate actual innocence. Nor can he demonstrate a basis for equitable tolling. To show equitable tolling, Negron must demonstrate that he was diligently pursuing his rights and yet an extraordinary circumstance stood in his way of filing a timely claim. *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005). The Court sees no reason why Negron did not bring his claim in his original *habeas* petition given that the predicate of the claim—the grand jury and trial testimony—was available to Negron long before the statute of limitations expired. There is no reason why Negron should have waited until 2016 to bring his claim in his amended filing.

## VII.    Claim Seven

In Claim Seven, Negron contends that the police committed official misconduct pursuant to 720 ILCS 5/33-3 when they deterred eyewitnesses from coming forward who allegedly could have exculpated him. (Dkt. No. 46 at 20–22.)

Illinois's Criminal Code punishes criminal misconduct by governmental officials as a Class 3 felony. 720 ILCS 5/33-3. Nonetheless, Respondent is correct that Negron cannot raise a claim here regarding a violation of Illinois state law as "state law violations provide no basis for federal *habeas* relief." *Estelle v. McQuire*, 502 U.S. 62, 68 (1991). Claim Seven therefore must be dismissed as non-cognizable. The Court acknowledges its responsibility to construe liberally Negron's *pro se* filings before the Court. *McGee v. Bartow*, 593 F.3d 556, 565 (7th Cir. 2010).

While his argument that the police allegedly deterred exculpatory witnesses from coming forward sounds as a claim under *Brady v. Maryland*, 373 U.S. 83 (1963), Negron failed to preserve a *Brady* claim in state court and raising such a claim before this Court at this late date would be untimely. Claim Seven is denied.

## VIII.   Claim Eight

Negron argues in Claim Eight that his trial counsel was ineffective for failing to call Jaime Rodriguez as a defense witness and that his appellate counsel for his direct appeal and his post-conviction counsel were ineffective for failing to raise the trial counsel's ineffectiveness in the later proceedings. (Dkt. No. 46 at 23–27.)

Like with Claim Six, Negron raised Claim Eight for the first time in state court in his successive post-conviction petition. (Dkt. No. 57-39 at 30–32.) But the state trial court denied Negron leave to file his successive petition. (Dkt. No. 57-39 at 81.) And Negron failed to raise the present ineffective assistance of counsel argument on appeal to the Illinois Appellate Court (Dkt. No. 57-19) or his PLA before the Illinois Supreme Court (Dkt. No. 57-22). Negron only raised the actual innocence claim on appeal and dropped the other claims, including the present ineffective assistance of counsel claim. The state appellate court affirmed the trial court's denial of Negron's request for leave to file his successive post-conviction petition. *Successive Post-Conviction Appeal*, 2014 IL App (1st) 123237-U, 2014 WL 2811532, at *5. And the Illinois Supreme Court denied Negron's PLA, ending the successive petition proceedings. *Illinois v. Negron*, No. 118228, 21 N.E.3d 717 (Ill. Nov. 26, 2014) (Table). Claim Eight is therefore procedurally defaulted because Negron failed to raise it at each level of state court review as required and, independently, it is barred by the adequate and independent state ground of the decision denying him leave to file

19

his successive post-conviction petition. As with the prior claims, Negron cannot demonstrate cause and prejudice or a fundamental miscarriage of justice as necessary to excuse the default. Claim Eight is denied.

## IX.    Claim Nine

Finally, in Claim Nine, Negron reasserts his sufficiency of the evidence argument. (Dkt. No. 46 at 28–29.) The Court rejected a similar sufficiency of the evidence argument in discussing Claim Four above. Claim Nine is denied based upon the reasoning applied in the denial of Claim Four.

## CONCLUSION

For the reasons discussed above, Negron's *habeas* petition, including the supplemental claims, is denied. The Court further declines to issue a certificate of appealability, as Negron has not made a substantial showing of the denial of a constitutional right or demonstrated that reasonable jurists would debate, much less disagree with, this Court's resolution of his claims. *Arredondo v. Huibregtse*, 542 F.3d 1155, 1165 (7th Cir. 2008) (citing 28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 484 (2000); *Barefoot v. Estelle*, 463 U.S. 880, 893 & n.4 (1983)).

Negron is advised that this is a final decision ending his case in this Court. If Negron wishes to appeal, he must file a notice of appeal within 30 days of the entry of judgment. *See* Fed. R. App. P. 4(a)(1). Negron need not bring a motion to reconsider this Court's ruling to preserve his appellate rights. However, if Negron wishes the Court to reconsider its judgment, he may file a motion under Federal Rule of Civil Procedure 59(e) or 60(b). Any Rule 59(e) motion must be filed within 28 days of the entry of judgment. *See* Fed. R. Civ. P. 59(e). The time to file a motion pursuant to Rule 59(e) cannot be extended. *See* Fed. R. Civ. P. 6(b)(2). A timely Rule 59(e) motion

suspends the deadline for filing an appeal until the Rule 59(e) motion is decided. *See* Fed. R. App. P. 4(a)(4)(A)(iv). Any Rule 60(b) motion must be filed within a reasonable time and, if seeking relief under Rule 60(b)(1), (2), or (3), must be filed no more than one year after entry of the judgment or order. *See* Fed. R. Civ. P. 60(c)(1). The time to file a Rule 60(b) motion cannot be extended. *See* Fed. R. Civ. P. 6(b)(2). A Rule 60(b) motion suspends the deadline for filing an appeal until the Rule 60(b) motion is decided only if the motion is filed within 28 days of the entry of judgment. *See* Fed. R. App. P. 4(a)(4)(A)(vi).

ENTERED:

Dated: October 29, 2018

_____
Andrea R. Wood
United States District Judge